Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

SS-6

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4828 | **DATE** | 2/23/2001 |
| **CASE TITLE** | Rodney Hill vs. United States of America | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's motion to vacate conviction and set aside sentence pursuant to 28 U.S.C. § 2255 is denied. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 13 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RODNEY HILL, | ) | |
|---|---|---|
| | ) | **DOCKETED** |
| Petitioner, | ) | |
| | ) | FEB 2 6 2001 |
| | ) | No. 00 C 4828 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court is Rodney Hill's ("Petitioner") Motion to Vacate Conviction and Set Aside Sentence Pursuant to 28 U.S.C. § 2255. For the following reasons, Petitioner's motion is denied, and this case is dismissed with prejudice.

## RELEVANT FACTS

The relevant facts are adequately set forth in the published opinion by the Seventh Circuit with respect to Petitioner's direct appeal and will only be repeated herein as necessary. Petitioner was indicted with bank robbery in violation of 18 U.S.C. § 2113(a). After a jury trial, petitioner was found guilty. Petitioner then appealed his conviction, claiming that the evidence at trial was not sufficient to prove beyond a reasonable doubt that the intimidation element of the robbery statute was satisfied. On August 9, 1999, Petitioner's conviction was affirmed by the Seventh Circuit. *See United States v. Hill*, 187 F.3d 698 (7th Cir. 1999). Petitioner now wages a timely collateral attack in this Court.

As detailed in the Seventh Circuit's opinion, the facts at trial established that on December 29, 1997, at approximately 10:00 a.m., petitioner entered the St. Paul Federal

Bank, approached a bank teller, mumbled something to her and threw a plastic grocery bag on the counter. *Id.* at 700. The teller responded by asking "How much?" to which petitioner replied "All of it." *Id.* The teller then reached into her drawer and began giving petitioner the money in her drawer. *Id.* While removing money from her drawer and placing it into petitioner's bag, the teller began to reach for her bait money; however, as she reached for the bait money; petitioner said, ". . . don't give me any of the funny money." *Id.* As the teller continued putting money in the petitioner's plastic bag, he leaned forward into the teller's booth, and ordered her to "hurry up, hurry up, bitch." *Id.* At about the same time, the teller saw the petitioner reach into his pocket and gesture as if to tell her that he had a gun. *Id.* The teller did not hit the bank's alarm because she could not do so without being obvious and had been instructed to reach for the alarm during the robbery only if she felt she could do so safely. *Id.*

On January 15, 1998, the victim bank teller was shown a photo spread and identified the petitioner as the bank robber. *Id.* On January 19, 1998, the FBI, after having obtained an arrest warrant, arrested the petitioner at his residence. *Id.* The petitioner was read his rights, and he waived them in writing. The petitioner then told the FBI what happened on December 29, 1997. The petitioner described how on the morning of December 29, 1997, he got up and went out looking for work and, after not being able to find any, work he decided to rob the bank because he needed money. *Id.* The petitioner said he found a plastic bag on the ground, walked to the bank, went to the second teller from the door, demanded money, was given money and then put the money inside his coat and walked out of the bank. *Id.* The petitioner

was then shown a flier containing a still photo of the bank robber taken by the surveillance cameras the day of the robbery. *Id.* The petitioner recognized himself and admitted that it was a photo of him robbing the bank. He then signed his name on the flier. *Id.* At trial, the teller identified the petitioner as the person who robbed the bank.

## STANDARDS

"[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States,* 32 F.3d 259, 263 (7th Cir. 1994) (internal citations and quotations omitted). A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal. *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995). A petitioner is barred from raising, in a § 2255 proceeding, constitutional issues that could have been raised earlier unless he or she can show cause and prejudice. *Bontkowski v. United States,* 850 F.2d 306, 313 (7th Cir. 1988). Non-constitutional errors that could have been raised on appeal are barred in a § 2255 proceeding, regardless of cause and prejudice. *Id.* Thus, absent a lack of jurisdiction or fundamental miscarriage of justice, "arguments based on the Sentencing Guidelines must be raised on direct appeal or not at all." *Martin v. United States,* 109 F.3d 1177, 1178 (7th Cir. 1996) (citing *Scott v. United States,* 997 F.2d 340 (7th Cir. 1993)).

A district court may not reach the merits of an appealable issue in a § 2255 proceeding unless the issue has been raised in a procedurally appropriate manner. *See Theodorou v. United States,* 887 F.2d 1336, 1339 (7th Cir. 1989); *Johnson v. United States,* 838 F.2d 201,

3

202 (7th Cir. 1988) (emphasizing that a § 2255 motion "will not be allowed to do service for an appeal"). Failure to establish cause or prejudice requires dismissal of the habeas petition. *See, e.g., Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988).

To show cause, the petitioner must demonstrate that an external objective factor impeded his ability to appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). In other words, a "showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials,' made compliance impracticable, would constitute cause under this standard." *Id.* (citations omitted).

The "miscarriage of justice" exception to cause and prejudice is more narrow: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at 496. Moreover, this exception is reserved solely for those with a claim of actual innocence. *See Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995) (holding that the petitioner's claim must be one of factual innocence, not legal innocence).

## ANALYSIS

Petitioner makes numerous allegations of ineffective counsel. In his § 2255 motion, petitioner alleges that he was denied effective assistance of counsel in the following ways: (1) FBI agents continued to interview him after his attorney called and told them that she wanted to be present to oversee any further interrogation; (2) his Fourth Amendment rights were violated when FBI agents entered his girlfriend's house, searched the house and then arrested

4

him; (3) his attorney failed to file pretrial motions to suppress his statement and to challenge the legitimacy of the unsigned statement he had made; (4) his attorney failed to present an alibi defense; (5) his attorney failed to call an expert witness on identification; and 6) his attorney failed to challenge the photo array.

Petitioner also claims that his Sixth Amendment rights were violated because the trial court did not allow the jury to decide if the bank he robbed was FDIC insured. Petitioner thus claims that the district court did not have jurisdiction. Lastly, petitioner challenges his sentence as a career criminal.

After a careful analysis of the relevant pleadings and record in this case, this Court concludes that none of the petitioner's claims merits relief under the applicable standards. Furthermore, because petitioner's factual claims are unsupported by the record, this Court concludes that an evidentiary hearing is unnecessary.

## I. Petitioner Received Effective Representation By His Trial Counsel

Petitioner faces a steep hurdle to establish that his trial counsel was ineffective. The Seventh Circuit has set forth the requirements for reviewing a claim of ineffective assistance of counsel in a § 2255 claim.

> The defendant bears a heavy burden in establishing an ineffective assistance of counsel claim. He must show (1) that his attorney's representation fell below an objective standard of reasonableness (performance prong), *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2965, 80 L. Ed 2d 674 (1984), and (2) that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong), *id.* at 694, 104 S.Ct. at 2068. (Other citations omitted). With regard to the performance prong, the defendant must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

******
>As to the prejudice prong of the inquiry, a "reasonable probability" of a different result means a "probability sufficient to undermine confidence in the outcome [of the trial.]" *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

*United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1988), *cert. denied*, 492 U.S. 908 (1989).

There is a strong presumption that trial counsel rendered reasonably effective assistance. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (because of the difficulty of evaluating trial decisions, courts should be highly deferential when reviewing charges of deficient performance); *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir. 1991). In reviewing a claim of ineffective assistance of counsel, courts look to the totality of circumstances. *Strickland*, 466 U.S. at 690; *United States v. Hope*, 906 F.2d 254, 264 (7th Cir. 1990), *cert. denied*, 499 U.S. 983 (1991). To overcome that presumption and prevail on his claim, petitioner must show that his trial counsel's performance fell below an objective standard of reasonableness and that counsel's deficiencies prejudiced his defense. *Strickland*, 466 U.S. at 694; *Moya-Gomez*, 860 F.2d at 763. The first component is satisfied if petitioner can identify specific "acts or omissions . . . which were outside the range of professionally competent assistance. *Strickland*, 466 U.S. at 690. To satisfy the second component, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694.

Unfortunately for petitioner, all of his assertions of ineffectiveness represent the classic type of "Monday Morning quarterbacking" which are based on pure speculation and conjecture. None of these claims is supported by any evidence or case law. These type of

6

assertions have been consistently rejected. *See United States ex rel. Schlager v. Washington*, 887 F.Supp. 1019 (N.D. Ill. 1995), *aff'd*, 113 F.3d 763 (7th Cir. 1997).

In fact, in examining counsel's performance, courts "indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Messino*, 55 F.3d 1241, 1252 (7th Cir. 1995). An attorney is not required to assert meritless claims to effectively function as counsel. *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993); *Kurina v. Thieret*, 853 F.2d 1409, 1417 (7th Cir. 1988); *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990) (stating "it is not ineffective assistance for counsel to not file a meritless motion"); *United States v. Madewell*, 917 F.2d 301, 304 (7th Cir. 1990) (noting "[i]f a particular trial tactic is clearly destined to prove unsuccessful, then the Sixth Amendment standard of attorney competence does not require its use").

### A. Petitioner Validly Waived His Rights and the Admission of His Statement Did Violate His Constitutional Rights

Petitioner argues that he was denied effective assistance of counsel in part because FBI agents continued to interview him after his attorney had called the FBI and told them that she wanted to be present to oversee any further interrogation. Petitioner, however, fails to present any evidence to support his claim. Moreover, because petitioner validly waived his rights to an attorney in writing, this Court concludes there was no error in the admission of his statements.

Petitioner was arrested at his residence pursuant to the issuance of a valid arrest warrant signed by a magistrate judge. After his arrest, he was transferred to the offices of the FBI where he was read his rights. Petitioner waived his *Miranda* rights in writing and was then interviewed. Petitioner then admitted his involvement in the bank robbery. FBI agents

7

then reduced petitioner's statements to writing and began reviewing the statement with him. After reviewing the statements with petitioner, FBI agents asked him to sign it. However, prior to signing the document, his attorney, Federal Defender Andrea Gambino, arrived at the offices of the FBI and instructed petitioner not to sign the statement. Thereafter, petitioner did not sign the statement and FBI agents stopped the interview.

Petitioner argues, in his motion, that his attorney, Andrea Gambino, notified the FBI and asked them not to interview him outside of her presence. However, he fails to identify any facts or evidence to support his allegation. There simply is no evidence in the record that FBI Special Agent Mark Quinn had any conversation or contact with defense counsel, Ms. Gambino, prior to the day she arrived at the offices of the FBI. Because petitioner has provided no evidence to support his claim, his conclusory allegation will not sustain § 2255 motion. *See United States v. Malave*, 22 F.3d 145 (7th Cir. 1994).

Even assuming *arguendo* that Ms. Gambino did ask the FBI not to interview petitioner, because petitioner had validly waived his right to counsel, the FBI would not have been obligated to advise him of Gambino's efforts to contact him. In *Moran v. Burdine*, the Supreme Court stated that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." 475 U.S. 412, 422 (1986). In *Moran*, the defendant was being interviewed by local police and, unbeknownst to him, his sister had contacted an attorney who had then contacted the police and asked them not to interview the defendant. *Id.* at 471. The police continued to interview the defendant, even though they said

they would not, and elicited statements from him regarding the offense he was ultimately convicted of, murder. *Id.* The *Burdine* Court refused to adopt a rule requiring the police to inform a suspect of an attorney's efforts to reach him and found that the failure of the police to advise the defendant of the efforts of an attorney to contact him did not deprive the defendant of his right to counsel. *Id.* at 422-23. As such, even if petitioner's allegations are true, his waiver of rights in writing made his statements admissible under *Moran*. Therefore, Ms. Gambino's failure to file a motion to suppress petitioner's statement to the FBI did not constitute ineffective assistance of counsel.

### B. Petitioner's Arrest Was Constitutional

Petitioner further asserts that he was denied effective assistance of counsel in that his Fourth Amendment rights were violated when FBI agents entered his girlfriend's house and arrested him. Specifically, petitioner claims that the FBI's search of his girlfriend's house was unreasonable and that the FBI should not have been allowed to conduct a protective sweep of the house. The undisputed facts established that the FBI arrested petitioner pursuant to an arrest warrant obtained from a magistrate judge. No documents or other trial evidence were retrieved from the residence where petitioner was arrested.

The arrest warrant gave the FBI authority to enter petitioner's residence and search anywhere in the house where he could be found. *Maryland v. Buie*, 494 U.S. 325, 332-33 (1990). Petitioner's defense counsel acted reasonably in not filing a motion relating to his arrest because petitioner's Fourth Amendment rights were not violated.

9

## C. The Government's Use of Petitioner's Statement at Trial Was Proper

Petitioner next asserts that he was denied effective assistance of counsel because: (1) the government used his statement without first proving that it was given voluntarily, knowingly and intelligently; and (2) because his attorney improperly failed to file a pretrial motion to suppress the statement. However, as with his other claims, petitioner fails to present any evidence or information supporting his claim.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court, recognizing that custodial interrogatories, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely," required law enforcement to apprise the suspect of his right to remain silent and to "have counsel present . . . if [he] so desires." *Id.* at 467-70. Thus, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Id.* at 473-74; *see also Edwards v. Arizona*, 451 U.S. 477 (1981).

In order for the waiver to be valid, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. A valid waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a

court properly conclude that the *Miranda* rights have been waived. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

The undisputed facts of this case show that petitioner waived his right to an attorney and that defense counsel acted reasonably in not filing a motion to suppress petitioner's statement. At trial, the government proved defendant waived his rights by introducing his written waiver. In this § 2255 motion, petitioner does not allege any facts asserting he was coerced into making the statement or that the statement was involuntary. In fact, the FBI statement shows otherwise. This statement shows that petitioner was advised of his rights, given a cigarette and diet Pepsi, photographed, given an additional soft drink, cigarette and popcorn and then assisted in providing a signed statement. The statement obtained by the FBI was on a voluntary basis. The written waiver indicates the petitioner chose to freely waive his rights after he was fully aware of both the nature of the right being abandoned and the consequences of the decision to sign the waiver form. Without colorable grounds for challenging petitioner's statement, counsel's decision to forego filing a motion to suppress this statement was eminently reasonable.

### D. Defense Counsel's Failure to Provide an Alibi Defense Was Eminently Reasonable

Petitioner now maintains that his attorney failed to follow through on an alibi defense. Without stating who the alibi witnesses petitioner intended to call were or what they would say, he simply asserts that he "told counsel the names and addresses of persons who would be able to be his alibi witnesses that he was in their presence at the time of the bank robbery; and would testify to the same at trial, but she refuse[d] to contact them."

11

Petitioner has not provided any evidence to support his new alibi defense. Instead, he has merely set forth a conclusory allegation which will not sustain a § 2255 motion. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) All of the trial evidence in this case established beyond a reasonable doubt, as the jury concluded, that petitioner was the person who robbed the bank. Petitioner had been identified by the victim teller, his photo had been obtained by the bank's surveillance camera and he was identified at trial as the bank robber. In addition, petitioner admitted to robbing the bank after he had knowingly waived his right to remain silent and his right to an attorney. In addition, the government had evidence that petitioner had robbed the exact same bank before and sought to introduce this evidence as Fed. R. Evid. 404(b) evidence but this Court ruled that it was too prejudicial and denied the government's motion. Simply put, the evidence of petitioner's involvement in the bank robbery was overwhelming. Petitioner has not asserted any facts to show that his lawyer's failure to call witnesses and produce evidence at his trial prejudiced him in any way.

A "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *United States v. Weaver*, 882 F.2d 1128, 1138 (7th Cir. 1989) (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). Moreover, a lawyer's decision to call witnesses is a matter of trial strategy. For example, the Seventh Circuit has held that a lawyer's decision not to call a family member as a witness is a matter of trial strategy because family members can be impeached for bias. *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) (quoting *United States ex rel. Smith v. Lane*, 794 F.2d 287, 292-93 (7th Cir. 1986)). Further, courts

12

have held that a lawyer's decision not to cross-examine a sympathetic witness is a matter of trial strategy. *Bergmann*, 65 F.3d at 1380 (quoting *Six v. Delo*, 885 F.Supp. 1265, 1279-80 (E.D. Mo. 1995)). In this case, considering the evidence against the defendant, it was not unreasonable for the defense not to present an alibi defense.

### E. The Failure to Call an Expert Witness on Identification Was Not a Result of Ineffective Counsel

Petitioner also states that his attorney improperly failed to call an expert witness on identification. Defendants bear a heavy burden in establishing that counsel was ineffective because defense counsel is presumed effective. *United States v. Jimenez*, 992 F.2d at 134 (quoting *United States v. Booker*, 981 F.2d 289, 292 (7th Cir. 1992); *United States v. Donaldson*, 978 F.2d 381, 394 (7th Cir. 1992)). A defendant will not be able to meet the heavy *Strickland* burden by alleging that his lawyer gave him deficient advice or made an ineffective strategic decision. *Jimenez*, 992 F.2d at 134. Finally, a court must not judge a lawyer's conduct using the benefit of hindsight. *Strickland*, 466 U.S. at 689. Given our description of the trial evidence, there is no way that petitioner can establish how his counsel's failure to call an expert witness on identification fell below an objective standard of reasonableness. Moreover, the Court easily concludes that the use of such an expert would not have changed the results of the trial proceedings. In view of the nature of the trial evidence, petitioner's counsel was not ineffective in failing to call an expert witness on identification.

### F. Trial Counsel's Failure to Challenge the Petitioner's Photo Array Was Not Ineffective

Petitioner lastly asserts that his counsel should have challenged the photo array. He asserts that the FBI used a very suggestive and prejudicial photo array against the petitioner. (R. 3-1, Am. 2255 Habeas Corpus Pet. at 14.) Petitioner states that any competent attorney would have objected to the array at either a suppression hearing or at trial.

In determining whether the trial court committed clear error in allowing the identification testimony from a photo array, a two-step analysis is required. *See United States v. Hall*, 109 F.3d 1227, 1237 (7th Cir. 1997). The first question is whether the identification procedure used was unduly suggestive. *Id*. If it is found unduly suggestive, the identification can still be admissible so long as the testimony was reliable, given the totality of the circumstances. *Id*. at 1237-38. In assessing reliability, the Seventh Circuit looked at the following factors: (1) the opportunity of the witness to view the event and the actor; (2) the degree of the witness's attention; (3) the accuracy of the witness's description; (4) the witness's level of certainty; and finally (5) the time elapsed between the crime and the identification. *See United States v. Fryer*, 974 F.2d 813, 821 (7th Cir. 1992). According to the Supreme Court, "the primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). "The totality of [the] circumstances reference is a reminder that there can be an infinite variety of differing situations involved in the conduct of a particular lineup. The police authorities are required to make every effort reasonable

under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification." *United States v. Moore*, 115 F.3d 1348, 1361 (7th Cir. 1997).

In this case, there is nothing about the photo array which makes it unduly suggestive or prejudicial. The FBI photo array shown to the victim teller consisted of six African-American males. The six black men all appear to have at least some similar features. Because there is nothing suggestive in this array, petitioner fails to pass the first hurdle of the two-step analysis. Furthermore, under the totality of the circumstances, the admission of the photo array was not error. The victim teller was within arm's length of petitioner and had a good opportunity to view petitioner. The victim teller was also accurate in her general description of petitioner and was certain that he was the bank robber. Finally, the bank was robbed on December 29, 1997, and the victim teller identified petitioner in the photo spread on January 15, 1998, a time period of just over two weeks. Given these undisputed facts, petitioner's trial counsel was not ineffective for not filing a motion challenging the photo array.

**II. Sixth Amendment Rights Were Not Violated**

Petitioner also claims that this Court violated his Sixth Amendment rights because the government failed to prove subject matter jurisdiction. At trial, petitioner stipulated that the St. Paul Federal Bank was federally insured. (Tr. 170-71.) The stipulation was read into the record. There was nothing improper about the way this element of the offense was proved and it in no way violated petitioner's Sixth Amendment rights.

## III. The Trial Court Did Not Commit Any Sentencing Errors

Lastly, petitioner argues that the district court was without jurisdiction to enhance his sentence as a career criminal offender. He further argues that the government did not file a notice that it would enhance petitioner's sentence for prior convictions as required by law.

Generally, claims based upon the United States Sentencing Guidelines are not cognizable in a § 2255 motion, absent a complete miscarriage of justice. *Scott v. United States*, 997 F.2d 340, 342-43 (7th Cir. 1993). "A claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum." *Id.* at 341.

In this case, petitioner's challenge to his Guideline sentence fares no better. The government was under no obligation to file a notice that it sought to enhance petitioner's sentence under the career criminal offender guideline. Petitioner's guidelines were properly calculated under the sentencing guidelines and, in fact, this issue and objection were specifically raised at petitioner's sentencing hearing. This Court heard argument on the issue and after due consideration found that petitioner qualified as a career criminal offender, calculated his criminal history as a category IV and determined that his base offense level was at a level 32. Petitioner's guideline sentence of 210 months was not challenged on direct appeal and was properly imposed.

## CONCLUSION

For the foregoing reasons, the Court denies petitioner Rodney Hill's Motion to Vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and dismisses this case with prejudice. (R. 3-1)

Entered:

*[signature]*

**Ruben Castillo**
**United States District Judge**

**DATED: February 23, 2001**